**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| MARTIN DAVD HOYLE and<br>B.E. TECHNOLOGY L.L.C.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MICHELLE K. LEE, JAMES DONALD SMITH,<br>JAMES T. MOORE, SALLY C. MEDLEY,<br>KALYAN K. DESHPANDE,<br>LYNNE E. PETTIGREW, and<br>UNKNOWN OFFICERS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      No. 2:21-cv-02512-JPM-tmp |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM**
**OF LAW**

> BRIAN M. BOYNTON
> Acting Assistant Attorney General
> Civil Division
>
> C. SALVATORE D'ALESSIO, JR.
> Acting Director, Torts Branch
>
> John B. F. Martin
> NY Bar No. 4682928 (admitted W.D. Tenn.
> 10/5/21)
> Trial Attorney, Constitutional Torts Staff
> Torts Branch, Civil Division
> U.S. Department of Justice
> Ben Franklin Station, P.O. Box 7146
> Washington, D.C. 20044
> T: (202) 616-4492; F: (202) 616-4314
> John.B.Martin@usdoj.gov
>
> *Counsel for Michelle K. Lee, James Donald Smith, James T.*
> *Moore, Sally C. Medley, Kalyan K. Deshpande, and Lynne*
> *E. Pettigrew in their individual capacities*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iv

I.     INTRODUCTION ...........................................................................................1

II.    FACTUAL BACKGROUND ............................................................................2

    A.    Plaintiffs' Patents ..............................................................................2

    B.    The AIA and the IPR Process ...........................................................3

    C.    Plaintiffs' Infringement Suit and Institution of IPR............................4

    D.    Lee's Post-Institution Confirmation as USPTO Director.....................5

    E.    PTAB Panel Decisions and their Affirmance by the Federal Circuit .............................6

    F.    Subsequent Articles About the Director's Authority and PTAB's Performance Policies.............................................................................7

    G.    IPR Panel's Receipt of Performance-Based Annual Bonuses in 2015 .......................9

    H.    Hoyle Learns of Prior USPTO Examination of His Patent Application Under SAWS ....................................................................9

    I.    Publication of a Paper Critical of PTAB's Previously Disclosed Peer Review and Performance Evaluation Processes.........................10

    J.    Plaintiffs' Claims in this Litigation .................................................12

III.    LEGAL STANDARD ....................................................................................13

IV.    ARGUMENT ................................................................................................14

    A.    Hoyle Lacks Standing Because He Has No Property Interest in the Patents ...........14

    B.    The Complaint Fails to Demonstrate Personal Jurisdiction Over Defendants .........15

    C.    Plaintiffs' Claims are Time-Barred .................................................16

    D.    Plaintiffs Cannot Obtain a Novel *Bivens* Remedy under Established Precedent.........19

    E.    APJs Deshpande, Medley, and Pettigrew Have Absolute Immunity from this Suit ..25

    F.    All Defendants Are Entitled to Qualified Immunity ......................................26

        i.    *The Complaint Fails to Allege Defendants' Personal Involvement in Violating Plaintiffs' Rights*.................................................................................27

*ii.*      *Due Process Precedents Refute Plaintiffs' Claims* ........................................................... 31

*iii.*     *Plaintiffs' Alleged Statistical Evidence Does Not Establish that the APJs Were Biased* ................................................................................................................................. 33

*iv.*      *It Was Not Clearly Established that the Post-Institution Fee System and Performance Evaluation Standards Created Unconstitutional Structural Bias* ................................. 34

*v.*       *It Was Not Clearly Established that the ARC, Panel Stacking, or SAWS Violated Plaintiffs' Rights* ......................................................................................................... 37

*vi.*      *The Cases Cited in the Complaint Are Immaterial to the Immunity Analysis* .............. 39

V.    CONCLUSION ........................................................................................................................ 40

# TABLE OF AUTHORITIES

**Federal Cases**

*AlixPartners, LLP v. Brewington,*
 836 F.3d 543 (6th Cir. 2016) .................................................................... 13

*al-Kidd v. Ashcroft,*
 580 F.3d 949 (9th Cir. 2009) .................................................................... 26

*Allen v. Comm'r of Soc. Sec.,*
 2018 WL 4625738 (W.D. Mich. Sept. 27, 2018) ...................................... 32

*Alpha Epsilon Phi Tau Chapter Hous. Ass'n v. City of Berkeley,*
 114 F.3d 840 (9th Cir. 1997) .................................................................... 33

*Am. BioCare Inc. v. Howard & Howard Att'ys, PLLC,*
 702 F. App'x 416 (6th Cir. 2017) ............................................................. 14

*Am. Copper & Brass, Inc. v. Mueller Eur., Ltd.,*
 452 F. Supp. 2d 821 (W.D. Tenn. 2006) .................................................. 14

*Apple Inc. v. Voip-Pal.com, Inc.,*
 976 F.3d 1316 (Fed. Cir. 2020) ............................................................... 24

*Arar v. Ashcroft,*
 585 F.3d 559 (2d Cir. 2009) ..................................................................... 27

*Ashcroft v. al-Kidd,*
 563 U.S. 731 (2011) .................................................................................. 26

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ............................................................................. passim

*B.E. Tech., L.L.C. v. Sony Mobile Commc'ns (USA) Inc.,*
 657 F. App'x 982 (Fed. Cir. 2016) ............................................................. 7

*B.E. Tech., LLC v. Amazon Digital Servs., Inc.,*
 2013 WL 12158571 (W.D. Tenn. Dec. 6, 2013) ......................................... 5

*B.E. Techn., L.L.C., v. Google, Inc.,*
 2016 WL 6803057 (Fed. Cir. Nov. 17, 2016) ............................................. 7

*Bailey v. City of Broadview Heights,*
 674 F.3d 499 (6th Cir. 2012) .................................................................... 32

*Barber v. Overton,*
 496 F.3d 449 (6th Cir. 2007) .................................................................... 25

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) .................................................................................. 13

*Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics,*
 403 U.S. 388 (1971) .................................................................................... 1

*Bondurant v. Christie,*
 2012 WL 1108523 (D.N.J. Apr. 2, 2012) ................................................. 28

*Bowles v. Babar,*
 54 F. Supp. 453 (E.D. Mich. 1944) ............................................................ 6

*Brana v. Moravcik,*
    2021 WL 4771008 (6th Cir. May 18, 2021)................................................................16

*Brosseau v. Haugen,*
    543 U.S. 194 (2004)................................................................................................39

*Butz v. Economou,*
    438 U.S. 478 (1978)................................................................................................25

*Callahan v. Fed. Bureau of Prisons,*
    965 F.3d 520 (6th Cir. 2020)...........................................................................19, 20

*Calphalon Corp. v. Rowlette,*
    228 F.3d 718 (6th Cir. 2000)................................................................................16

*Cameron v. Seitz,*
    38 F.3d 264 (6th Cir. 1994)...........................................................................25, 26

*Carlson v. Green,*
    446 U.S. 14 (1980)............................................................................................20, 24

*Carrillo v. Buendia,*
    2020 WL 4584380 (S.D. Tex. Aug. 10, 2020)....................................................30

*Carter v. Univ. of Tex.,*
    2020 U.S. Dist. LEXIS 126973 (E.D. Mich. Mar. 10, 2020)..............................16

*Chocallo v. Bureau of Hearings & Appeals, SSA,*
    548 F. Supp. 1349 (E.D. Pa. 1982).....................................................................37

*City of Tahlequah v. Bond,*
    __S. Ct.__, 2021 WL 4822664 (Sup. Ct. Oct. 18, 2021)...............................39, 40

*Clark v. Does,*
    2020 U.S. App. LEXIS 57 (6th Cir. Jan. 2, 2020)...............................................16

*Conn v. Zakharov,*
    667 F.3d 705 (6th Cir. 2012)................................................................................13

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001)................................................................................................22

*Cox v. Tennessee Val. Auth.,*
    1993 WL 72488 n.1 (6th Cir. Mar. 15, 1993)......................................................11

*Curtis v. Little,*
    2020 U.S. Dist. LEXIS 168746 (S.D. Ohio Aug. 3, 2020)..................................28

*Danielson v. Huether,*
    355 F. Supp. 3d 849 (D.S.D. 2018).....................................................................28

*Davis v. Passman,*
    442 U.S. 228 (1979)..............................................................................................20

*Delaware Riverkeeper Network v. FERC,*
    895 F.3d 102 (D.C. Cir. 2018).......................................................................32, 33

*DeMartino v. New York State Dep't of Lab.,*
    167 F. Supp. 3d 342 (E.D.N.Y. 2016)..................................................................29

*Directv, Inc. v. Treesh,*
 487 F.3d 471 (6th Cir. 2007) ........................................................................................13

*Dixon v. Barrett,*
 2012 U.S. Dist. LEXIS 188128 (E.D. Mich. Nov. 21, 2012) ........................................38

*Doe v. SexSearch.com,*
 551 F.3d 412 (6th Cir. 2008) ..............................................................................3, 6, 12

*Doolin Sec. Sav. Bank v. FDIC,*
 53 F.3d 1395 (4th Cir. 1995) ........................................................................................33

*Dorsey v. Barber,*
 517 F.3d 389 (6th Cir. 2008) ........................................................................................27

*Drone Techs., Inc. v. Parrot S.A.,*
 838 F.3d 1283 (Fed. Cir. 2016) ....................................................................................14

*Dugan v. Ohio,*
 277 U.S. 61 (1928) ........................................................................................................33

*Eidson v. State of Tenn. Dep't of Children's Servs.,*
 510 F.3d 631 (6th Cir. 2007) ........................................................................................13

*El Mokhamad v. Kelly,*
 2018 WL 488953 (E.D. Mich. Jan. 19, 2018) ..............................................................30

*Elsayed v. Vill. of Schaumburg,*
 2015 WL 1433071 (N.D. Ill. Mar. 26, 2015) ..............................................................29

*Energy Automation Sys., Inc. v. Saxton,*
 618 F. Supp. 2d 807 (M.D. Tenn. 2009) ........................................................................6

*Estes v. State of Tex.,*
 381 U.S. 532 (1965) ......................................................................................................40

*Flynn v. Greg Anthony Constr. Co.,*
 95 F. App'x 726 (6th Cir. 2003) ..................................................................................13

*Gannett Co., v. DePasquale,*
 443 U.S. 368 (1979) ......................................................................................................40

*Gibson v. Berryhill,*
 411 U.S. 564 (1973) ......................................................................................................32

*Giesse v. Sec'y of the HHS,*
 476 F. Supp. 2d 734 (N.D. Ohio 2006) ........................................................................21

*Goree v. Serio,*
 735 F. App'x 894 (7th Cir. 2018) ................................................................................21

*Haley v. Clarksville-Montgomery Cnty. Sch. Sys.,*
 353 F. Supp. 3d 724 (M.D. Tenn. 2018) ......................................................................18

*Hall v. Smith,*
 2021 WL 3929827 (S.D. Ohio Sept. 2, 2021) ..............................................................29

*Hamilton v. City of Romulus,*
 409 F. App'x 826 (6th Cir. 2010) ................................................................................28

*Hammonds v. Cuevas*

2018 U.S. Dist. LEXIS 142835 (S.D. Fla. Aug. 21, 2018) ...................................21

*Han v. Univ. of Dayton,*
2012 U.S. Dist. LEXIS 181079 (S.D. Ohio Dec. 21, 2012) ...............................6

*Harris v. FBOP,*
2020 WL 7586968 (6th Cir. Sept. 22, 2020) ..................................... 20, 24

*Hernandez v. Mesa,*
140 S. Ct. 735 (2020) ...........................................................19, 20, 21

*Hicks v. City of Watonga,*
942 F.2d 737 (10th Cir. 1991) .................................................. 35, 36

*Higdon v. Cannon,*
2012 WL 424965 (E.D. Tenn. Feb. 9, 2012) ......................................15

*Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n,*
426 U.S. 482 (1976) ..............................................................32

*Huff v. FirstEnergy Corp.,*
972 F. Supp. 2d 1018 (N.D. Ohio 2013) .........................................29

*Hunter v. Bryant,*
502 U.S. 224 (1991) ..............................................................27

*Illinois C. R. Co. v. Tennessee Val. Auth.,*
445 F.2d 308 (6th Cir. 1971) .....................................................11

*In re Alappat,*
33 F.3d 1526 (Fed. Cir. 1994) ....................................................38

*In re Oliver,*
333 U.S. 257 (1948) ..............................................................40

*Int'l Shoe Co. v. Washington,*
326 U.S. 310 (1945) ..............................................................15

*James v. Norfolk S. Ry. Co.,*
2020 WL 1316513 (N.D. Ohio Mar. 17, 2020) .....................................30

*Klein v. City of Jackson,*
477 F. App'x 317 (6th Cir. 2012) .................................................32

*Kurtz v. Hansell,*
2021 WL 1143619 (S.D.N.Y. Mar. 24, 2021) ......................................28

*Levine v. U.S.,*
362 U.S. 610 (1960) ..............................................................40

*Lundblad v. Celeste,*
874 F.2d 1097 (6th Cir. 1989) ....................................................17

*Lundblad v. Celeste,*
924 F.2d 627 (6th Cir. 1991) .....................................................17

*Lutz v. Chesapeake Appalachia, L.L.C.,*
717 F.3d 459 (6th Cir. 2013) .....................................................18

*Madstad Eng'g, Inc. v. United States PTO,*
756 F.3d 1366 (Fed. Cir. 2014) ...................................................24

*Mason v. Dep't of Just.,*
    39 F. App'x 205 (6th Cir. 2002) ............................................................................. 16, 17

*McCune v. City of Grand Rapids,*
    842 F.2d 903 (6th Cir. 1988) ................................................................................. 16

*McDonough v. Smith,*
    139 S. Ct. 2149 (2019) ........................................................................................... 16

*MCM Portfolio LLC v. Hewlett-Packard Co.,*
    812 F.3d 1284 (Fed. Cir. 2015) ............................................................................. 24

*Mobility Workx, LLC v. Unified Pats., LLC,*
    15 F.4th 1146 ............................................................................................... 2, 6, 36-37

*Moore v. Selsky,*
    900 F. Supp. 670 (S.D.N.Y. 1995) ....................................................................... 39

*Morinville v. United States PTO,*
    442 F. Supp. 3d 286 (D.D.C. 2020) ...................................................................... 19

*Morrison v. Lipscomb,*
    877 F.2d 463 (6th Cir. 1989) ................................................................................. 25

*NLRB v. Ohio New & Rebuilt Parts, Inc.,*
    760 F.2d 1443 (6th Cir. 1985) ............................................................................... 33

*Northern Mariana Islands v. Kaipat,*
    94 F.3d 574 (9th Cir. 1996) ................................................................................... 33

*Noval Int'l Res., LLC v. Andec, Inc.,*
    875 F. Supp. 2d 804 (W.D. Tenn. 2012) .............................................................. 16

*Oliva v. Nivar,*
    973 F.3d 438 (5th Cir. 2020) ................................................................................. 25

*Oliveras v. Basile,*
    440 F. Supp. 3d 365 (S.D.N.Y. 2020) .................................................................. 25

*Patlex Corp. v. Mossinghoff,*
    771 F.2d 480 (Fed. Cir. 1985) ............................................................................... 33

*Payne v. Jones,*
    2005 U.S. Dist. LEXIS 59364 (S.D. Ohio May 16, 2005) ..................................... 6

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ............................................................................................... 26

*Perkins v. Astrue,*
    648 F.3d 892 (8th Cir. 2011) ................................................................................. 32

*Reichle v. Howards,*
    566 U.S. 658 (2012) ......................................................................................... 26, 27

*Ruiz-Bueno v. Maxim Healthcare Servs. Inc.,*
    659 F. App'x 830 (6th Cir. 2016) ......................................................................... 17

*Sanders v. Herin,*
    2019 WL 9242906 (D.S.C. Dec. 12, 2019) .......................................................... 21

*Schwarz v. Meinberg*,
  761 F. App'x 732 (9th Cir. 2019) ............................................................25

*Schweiker v. Chilicky*,
  487 U.S. 412 (1988) ...........................................................................22, 24

*Schweiker v. McClure*,
  456 U.S. 188 (1982) ..................................................................................32

*SEC v. Goldstone*,
  952 F. Supp. 2d 1060 (D. N.M. 2013) ...................................................12

*Seguin v. City of Sterling Heights*,
  968 F.2d 584 (6th Cir. 1992) ...................................................................14

*Shapiro v. Goldman*,
  2016 WL 4371741 (S.D.N.Y. Aug. 15, 2016) ........................................28

*Sheppard v. Maxwell*,
  384 U.S. 333 (1966) ..................................................................................40

*Sinito v. United States*,
  750 F.2d 512 (6th Cir. 1984) ...................................................................38

*Sommer v. United States*,
  2010 WL 3584554 (S.D. Cal. Sept. 10, 2010) .......................................29

*Standard Acceptance Co. v. Lewis Cab Co.*,
  1996 WL 450811 (N.D. Ill. Aug. 6, 1996) .............................................17

*Szep v. Gen. Motors LLC*,
  491 F. Supp. 3d 280 (N.D. Ohio 2020) ..................................................14

*True Temper Sports, Inc. v. Ralco Indus.*,
  2016 WL 8376740 (W.D. Tenn. Oct. 14, 2016) .....................................15

*Tumey v. Ohio*,
  273 U.S. 510 (1927) ...........................................................................32, 35

*United States v. Arthrex, Inc.*,
  141 S. Ct. 1970 (2021) ................................................................................7

*United States v. Garcia*,
  855 F.3d 615 (4th Cir. 2017) .................................................................3, 6

*United States v. Index Newspapers LLC*,
  766 F.3d 1072 (9th Cir. 2014) .................................................................40

*United States v. Ochoa-Vasquez*,
  428 F.3d 1015 (11th Cir. 2005) ...............................................................40

*United States v. Torbert*,
  496 F.2d 154 (9th Cir. 1974) ...................................................................38

*Van Harken v. City of Chicago*,
  103 F.3d 1346 (7th Cir. 1997) ...........................................................32, 33

*Vogrin v. Barnhart*,
  2002 U.S. Dist. LEXIS 17454 (D. Kan. Aug. 20, 2002) .........................6

*Walden v. Fiore,*
    571 U.S. 277 (2014) ...................................................................................... 15, 16
*Wallace v. Kato,*
    549 U.S. 384 (2007) ............................................................................................16
*Waterman v. Mackenzie,*
    138 U.S. 252 (1891) ...........................................................................................14
*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) ..................................................................................passim
*Zundel v. Holder,*
    687 F.3d 271 (6th Cir. 2012) ........................................................................ 16, 17

## Federal Statutes

5 U.S.C. App. §§ 4(a)(4), 4(d); 4(e) ..........................................................................24
28 U.S.C. §§ 2671-2680 .............................................................................................24
35 U.S.C. § 3(b)(6) ......................................................................................................4
35 U.S.C. § 6(a) ....................................................................................................... 4, 9
35 U.S.C. § 6(c) ..................................................................................................... 6, 18
35 U.S.C. § 42(c)(2) ..................................................................................................34
35 U.S.C. § 102 ...........................................................................................................7
35 U.S.C. § 103 ...........................................................................................................6
35 U.S.C. § 261 .........................................................................................................14
35 U.S.C. § 311 ...........................................................................................................3
35 U.S.C. § 316(c) .......................................................................................................3
35 U.S.C. § 318(a) .......................................................................................................4
35 U.S.C. §§ 3(a)(2)(B), 5(d)(1) ...............................................................................34
35 U.S.C. §§ 6(a)-(c) ...................................................................................................4
35 U.S.C. §§ 144, 319 ............................................................................................ 4, 24
35 U.S.C. §§ 311(a); 312(a)(1) ....................................................................................4
35 U.S.C. §§ 311(a)-(c) ...............................................................................................4
35 U.S.C. §§ 314(a), 316(c) ........................................................................................4
35 U.S.C. §§ 316(a)(5) ; 316(a)(8); 316(a)(10); 316(e) ...........................................26
Pub. L. 106-13, S. 1948 ............................................................................................22
Pub. L. 111–117 ........................................................................................................34
Pub. L. 112-29 .............................................................................................. 3, 23, 24

## State Statutes

Tenn. Code Ann. § 20-2-225(2) .................................................................................15

## Federal Regulations

5 C.F.R. § 530.203(a) ..................................................................................................4

37 C.F.R. § 42.108 ........................................................................................................ 3

37 C.F.R. § 42.15(a)(1) ................................................................................................. 4

37 CFR §§ 41.152(a); 42.1(d); 42.2; 42.10; 42.20(c); 42.23; 42.51-65 ...................... 26

70 F.R. 25732-01 .......................................................................................................... 4

77 F.R. 48680-01 .......................................................................................................... 4

85 F.R. 46932-01 .......................................................................................................... 4

## Other Authorities

2011 U.S.C.C.A.N. 67 ................................................................................................. 32

## I.     INTRODUCTION

Defendants Michelle K. Lee, James Donald Smith, James T. Moore, Sally C. Medley, Kalyan K. Deshpande, and Lynne E. Pettigrew, as sued in their individual capacity ("defendants") respectfully move this Court, by this motion and memorandum of law, to dismiss plaintiffs Martin David Hoyle's ("Hoyle") and B.E. Technology, L.L.C.'s ("B.E.") (collectively, "plaintiffs") complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

Hoyle's company, B.E. Technology, sued several large technology companies for alleged infringement of its patents. After the infringement-suit defendants sought *inter partes* review ("IPR") on the patents before the United States Patent and Trademark Office ("USPTO"), a panel of three Administrative Patent Judges ("APJ") from the Patent Trial and Appeal Board ("PTAB") ruled the patent claims at issue were unpatentable. The Federal Circuit affirmed the IPR panel's decision, and this Court dismissed the infringement action. Dissatisfied with the extensive protections of the administrative and judicial processes they received, Hoyle and B.E. brought this novel suit for damages under *Bivens*[1] against the Director of the USPTO, the three-APJ IPR panel, and the PTAB's Chief and Vice Chief APJs. The complaint alleges that the USPTO administrators established a structural bias at the PTAB and violated plaintiffs' due process rights by enacting policies on employee evaluation, fee charging, and peer review, which influenced the panel APJs to issue an erroneous IPR determination. But Hoyle lacks standing to bring these claims because he no longer holds any rights in the subject patents, having previously assigned his ownership interest in both patents to B.E. And neither plaintiff is able to sue defendants in this Court, as plaintiffs fail to allege that defendants directed any of their conduct toward Tennessee in a manner that could subject them to personal jurisdiction in this Court.

---

[1] *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiffs' claims are also time-barred because they stem from 2015 IPR proceedings which occurred well outside the applicable one-year limitations period.

The complaint's allegations on the merits are just as deficient as those on jurisdiction. The Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), forecloses plaintiffs' bid to have this Court create a novel damages remedy against individual federal officers based on a wide-ranging challenge to the constitutionality of the Nation's patent review system. Under *Abbasi*, plaintiffs' proposed judicially-crafted damages remedy would run afoul of core separation-of-powers principles because, while Congress has chosen to protect patent holders' rights through the administrative process and direct judicial review, it has declined to authorize the damages remedy now sought from this Court. And even if a damages remedy were available, absolute immunity would bar plaintiffs' claims against the panel APJs insofar as those claims arise from the APJs' quintessential judicial act of ruling on the IPR proceedings. In addition, qualified immunity would doom the claims against all defendants because no precedent clearly establishes that the IPR determination and the disputed agency policies violated plaintiffs' due process rights. After all, even in the face of the contested policies, the panel APJs evidently made the right decision: the Federal Circuit affirmed the panel's determination, concluding it was based on substantial evidence and a correct understanding of the disputed patent claims. And the Federal Circuit recently upheld the constitutionality of several of the USPTO policies challenged here. *See Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146 (Fed. Cir. Oct. 13, 2021). Given these developments and other due process precedents, the complaint fails to allege that defendants personally violated plaintiffs' clearly established due process rights, and so plaintiffs cannot overcome qualified immunity. For that and other reasons, there should be a dismissal.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Patents

According to plaintiffs' complaint, Hoyle is the CEO and founder of B.E. *See* Complaint ("Com.") ¶¶ 4, 20.[2] In 1998 Hoyle filed patent applications concerning certain targeted internet advertising technology. *See* Com. ¶¶ 22-23. Those applications resulted in the USPTO issuing Hoyle two patents, dubbed the "290 patent" and the "314 patent," being issued in 2003 and 2004, respectively. Com ¶¶ 21-24. Hoyle then assigned to B.E. his "entire . . . interest in" the 290 and 314 patents. Assignment of 314 Patent, available at https://legacy-assignments.uspto.gov/assignments/assignment-pat-11503-42.pdf; *see* Assignment of 290 Patent, available at https://legacy-assignments.uspto.gov/assignments/assignment-pat-11503-33.pdf; Com. ¶ 21 n.2 (identifying B.E. as the owner by assignment of the patents).[3] In 2006 and 2007, the USPTO rejected some Google, Inc. patent applications as duplicative of the 290 and 314 patents. Com. ¶ 25.

**B.      The AIA and the IPR Process**

In 2011, Congress passed the Leahy-Smith America Invents Act ("AIA"), *see* Pub. L. 112-29, which made numerous changes to the processing of patent applications and review of issued patents in the United States. Among the changes, the AIA created a new adjudicative body, the PTAB, to replace the Board of Patent Appeals and Interferences and to preside over the newly created IPR process. *See* Leahy-Smith America Invents Act, Pub. L. 112-29, § 7; 35 U.S.C. § 311; *see generally* Pub. L. 112-29 §§ 2-37; 35 U.S.C. § 316(c); 37 C.F.R. § 42.108.

The PTAB consists of the Director of the USPTO, the Deputy Director, the Commissioner for Patents, the Commissioner for Trademarks, and APJs appointed by the Secretary of Commerce in

---

[2] At the motion to dismiss stage, defendants must assume, for purposes of this motion only, the truth of any well-pleaded allegations of fact in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In following that standard, this motion is not meant to suggest that the complaint's factual allegations are, in reality, true, and should this case proceed further, defendants intend to show otherwise.

[3] This Court may take judicial notice of patent assignments as public records on government websites. *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites"); *see also Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008). All cited online materials are in **Exhibit 1**.

consultation with the Director. 35 U.S.C. § 6(a). APJ compensation in the form of base salary is subject to a statutory cap. 35 U.S.C. § 3(b)(6). Although an APJ also may receive a bonus, i.e., a performance award, even if they already are at the base salary cap, the aggregate total of base salary and any bonus is further subject to a regulatory cap. 5 C.F.R. § 530.203(a) (limiting total compensation to level I of the Executive Schedule).

A panel of at least three APJs hears each IPR proceeding, and the Director has the power to appoint the panel. 35 U.S.C. §§ 6(a)-(c). Under the IPR procedure, after nine months have elapsed since the issuance of a patent, a person other than the owner of the patent may petition for review of its patentability and request that the PTAB cancel one or more claims of a patent as unpatentable. *See* 35 U.S.C. §§ 311(a)-(c). Upon filing the petition, the petitioner must pay a filing fee established by the Director. *See* 35 U.S.C. §§ 311(a); 312(a)(1); 37 C.F.R. § 42.15(a)(1). After receiving the petition and any response from the patent holder, the PTAB may institute IPR review—essentially an administrative trial on the petition—if it concludes that there is a reasonable likelihood that the petitioner would prevail with respect to at least one of the challenged claims. *See* 35 U.S.C. §§ 314(a); 316(c); *see also* 37 C.F.R. §§ 42.108(c); 42.4(a) (delegating Director's power to decide to institute IPR review to the PTAB); 42.2 (defining "Board" as a panel of the Board). Upon institution, the petitioner must pay a post-institution fee set by the Director. 37 C.F.R. § 42.15(a)(1). At the end of IPR proceedings, in the absence of a dismissal of the petition, the panel issues a final written decision on the patentability of the challenged claims. *See* 35 U.S.C. § 318(a). Any party may appeal the PTAB's final written decision to the U.S. Court of Appeals for the Federal Circuit. *See* 35 U.S.C. §§ 144; 319.[4]

### C.     Plaintiffs' Infringement Suit and Institution of IPR

---

[4] The regulations implementing fees, compensation caps, and the criteria for instituting IPR were implemented via a public notice and comment process rather than a purely internal process controlled by USPTO officials. *See* 85 F.R. 46932-01; 77 F.R. 48680-01; 70 F.R. 25732-01.

In early 2007, Hoyle learned that Google, Facebook, Inc., Microsoft Corp., Samsung Electronics America, Inc., and other large technology companies had allegedly infringed on the 290 and 314 patents. Com. ¶ 28. In September 2012, after the effective date of the AIA, B.E. filed a patent infringement suit in this Court against those companies and several others based on the alleged infringement on the 290 and 314 patents. *See* Com. ¶ 29; *see also* Com. ¶ 29 n.4 (collecting cases). In October 2013, Google and at least six other defendants in the infringement suits filed IPR petitions with the PTAB. *See* Com. ¶ 35; *B.E. Tech., LLC v. Amazon Digital Servs., Inc.*, 2013 WL 12158571, at *1 (W.D. Tenn. Dec. 6, 2013). The petitioners moved this Court for a stay of B.E.'s infringement action, and on December 3, 2013, this Court stayed that suit pending the outcome of the IPR proceedings. *See* Com. ¶ 35; *B.E. Techn., LLC*, 2013 WL 12158571, at *1, *4.

At the time of these proceedings, Smith was the Chief APJ of the PTAB, and Moore was the Vice Chief APJ. Com. ¶¶ 8-9. APJs Medley, Deshpande, and Pettigrew were assigned as a PTAB panel reviewing the related family of petitions challenging claims of the 290 and 314 patents. *See* Com. ¶ 36; *Facebook, Inc. v. B.E. Tech., LLC*, Cases IPR2014-00052, IPR2014-00053, IPR2014-0069, IPR2014-00743, IPR2014-00744, 2015 WL 1735098, *1 (P.T.A.B. Mar. 31, 2015). On April 9, 2014, the panel instituted each of the IPRs for the 290 and 314 patents filed at the time, and it subsequently granted motions of additional petitioners to join the proceedings. *See id.*

### D. Lee's Post-Institution Confirmation as USPTO Director

Meanwhile, on March 9, 2015—well after IPR was instituted in this case—Lee became the Director of the USPTO. *See* Actions: PN 61—114th Congress (2015-2016), available at https://www.congress.gov/nomination/114th-congress/61. Lee had previously led the USPTO's office in Silicon Valley beginning in 2012 and served as Deputy Director of the USPTO beginning in 2014; neither of those positions provided her with the statutory authority to assign APJs to IPR panels. *See* Com. ¶ 34; United States Patent and Trademark Office, Michelle K. Lee Biography, available at

https://www.uspto.gov/about-us/michelle-k-lee; 35 U.S.C. § 6(c).[5] Prior to USPTO service, Lee was

Deputy General Counsel, Head of Patents and Patent Strategy, for Google. *See* Com. ¶¶ 25, 34.

### E.    PTAB Panel Decisions and their Affirmance by the Federal Circuit

On March 31, 2015, the IPR panel in this case issued final written decisions concluding that

all of the challenged claims of the 290 and 314 patents were unpatentable. *See, e.g., Facebook, Inc.*, 2015

WL 1735098, *2, *13-16; *see also* Com. ¶ 36. For example, in *Facebook, Inc. v. B.E. Tech., LLC*, 2015 WL

1735098, the panel: recounted the evidence and oral argument provided by the parties; analyzed the

patents, related diagrams, and controlling regulations; addressed the parties' positions on patentability

and claim construction; and determined the petitioners had demonstrated by a preponderance of the

evidence that the challenged claims were unpatentable. *See id.*, at *2-16; Com. ¶ 36.

B.E. appealed the IPR decisions on the 290 and 314 patents to the Federal Circuit, which

consolidated appellate review of the decisions on the 290 patent in one appeal and consolidated review

of the decisions on the 314 patent in another appeal. Com. ¶ 37. In 2016, the Federal Circuit issued

two decisions affirming the PTAB's determinations regarding the 290 and 314 patents. Specifically,

the Federal Circuit ruled that substantial evidence supported PTAB's conclusion that the challenged

patent claims were unpatentable as obvious pursuant to 35 U.S.C. § 103, anticipated by one or more

---

[5] This Court may take judicial notice of Lee's official biography and the online congressional record of her confirmation because they are posted on official government websites and not reasonably subject to dispute. *See Garcia*, 855 F.3d at 621; *see also Doe*, 551 F.3d at 416; *Energy Automation Sys., Inc. v. Saxton*, 618 F. Supp. 2d 807, 809 n.2 (M.D. Tenn. 2009). Indeed, this Court may generally take judicial notice of the dates of Lee's service as Director of the USPTO, as courts regularly take judicial notice of government officials' dates of service. *See, e.g., Han v. Univ. of Dayton*, 2012 U.S. Dist. LEXIS 181079, at *13 (S.D. Ohio Dec. 21, 2012) (judicial notice of state university dean's time of service to show lack of involvement in alleged discrimination); *Vogrin v. Barnhart*, 2002 U.S. Dist. LEXIS 17454, at *1 n.1 (D. Kan. Aug. 20, 2002) (judicial notice of federal official's dates of service to substitute parties); *Bowles v. Babar*, 54 F. Supp. 453, 455 (E.D. Mich. 1944) (same); *see also Payne v. Jones*, 2005 U.S. Dist. LEXIS 59364, at *4 (S.D. Ohio May 16, 2005) (judicial notice of person's position as a judge in relevant timeframe to establish defense under *Rooker-Feldman* doctrine); *see generally Mobility Workx, LLC v. Unified Pats., LLC*, 15 F.4th 1146, 1151 n.1(Fed. Cir. 2021).

prior patents pursuant to 35 U.S.C. § 102, or both. *See B.E. Tech., L.L.C. v. Sony Mobile Comm'ns (USA) Inc.*, 657 F. App'x 982, 983-91 (Fed. Cir. 2016); *B.E. Techn., L.L.C., v. Google, Inc.*, 2016 WL 6803057, at *1-8 (Fed. Cir. Nov. 17, 2016); Com. ¶ 37.

F.    **Subsequent Articles About the Director's Authority and PTAB's Performance Policies**

Between 2017 and 2019, Hoyle read blog posts and a law review article critical of the USPTO Director's and the Chief APJ's power to assign a panel of more than three APJs to an IPR proceeding, which the blog and article referred to as "stacking" a panel. *See* Com. ¶¶ 39-42. As noted in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), which is cited in the complaint, the Director "*can* pick [APJs] predisposed to his views" under the AIA because he or she has the power to assign APJs to a panel, but *Arthrex* did *not* make any finding that the Director *had in fact done this. Arthrex, Inc.*, 141 S. Ct. at 1981 (emphasis added); *see also* Com. ¶¶ 41. Plaintiffs acknowledge that no such expansion of the panel with more than three judges occurred here, as the same three-APJ panel presided over the entire series of IPR proceedings concerning the 290 and 314 patents. *See* Com. ¶ 36.

After publication of the blog and law review article, "in or around mid-2020," unspecified online news articles and blog posts issued reports critical of an alleged bonus program for APJs. Com. ¶ 43. These reports relied on the USPTO's response to a Freedom of Information Act request in May 2020. *See* Com. ¶ 44 n.13, citing Document compilation produced in response to FOIA Request No. F.19-00277 ("FOIA Response"), available at https://usinventor.org/wp-content/uploads/2020/05/FOIA-F-19-00277-2019-11-04-APJ-PAPS.pdf. The FOIA response describes a 2018 APJ performance appraisal plan ("PAP") and related performance management records forms. *See* Com. ¶ 44 n.13; FOIA Response at 2-47.[6] The 2018 PAP evaluated each APJ's

---

[6] The Court may consider the FOIA response on this motion because plaintiffs incorporated it into the complaint, explicitly relying on the Performance Appraisal Plan from the FOIA response and

performance based on multiple criteria, including, *inter alia*, the quality of his or her decisions, the volume of cases (whether IPR, appeals, or other proceedings) on which the APJ worked, the relative speed with which the APJ disposed of cases, the APJ's demeanor in proceedings, and the APJ's interpersonal skills in interacting with internal stakeholders and the public. *See* FOIA Response at 2-20; *see also* Com. ¶¶ 44 (alleging that, in addition to rating performance based on the number and "types of work assignments," the system accounts for "various subjective criteria, such as the 'quality of APJs' written opinions, their interactions with stakeholders[7], and their level of support for the PTAB's mission and leadership.'".). APJs also received higher performance ratings based on "decisional units" for the various types of work assignments completed, and they received a set number of decisional units automatically for, among other things, authoring a final written decision for a panel on an *appeal* from a patent review decision. *See* Com. ¶ 44; *see also* FOIA Response at 2-3, 11, 32. The 2018 PAP did not explicitly address decisional units for a concurrence or dissent in IPR trials. It simply said that, in all "AIA trial proceedings," which would include IPR proceedings, "[d]ecisions and orders . . . will be assessed [for decisional unit credit] on a case-by-case basis, based on the complexity of the proceeding." FOIA Response at 11. According to a 2017 law review article, about 98% of final written decisions at the end of IPR trials—i.e., not counting cases in which the panel declined to institute IPR review in response to a petition—were unanimous that year. *See* Com. ¶ 53; *see also* Com. ¶ 53 n.17. In 2019, the USPTO capped the performance-based bonuses for APJs at $10,000 per year. Com. ¶ 80.

---

quoting an email contained within the response as factual support for their claim that the USPTO uses certain performance criteria to incentivize anti-inventor rulings. *See* Com. ¶¶ 44 n.13, 51; *see also Com.* ¶ 52 (quoting Gene Quinn, *Structural Bias at the PTAB: No Dissent Desired*, IPWATCHDOG.COM (Jun. 6, 2018), https://www.ipwatchdog.com/2018/06/06/structural-bias-ptab-no-dissent-desired/id=94507/ (quoting FOIA Response at 1)). Page citations in the FOIA reply are to page number in the overall pdf file on the site, not to the page numbers listed on documents within the file.

[7] "Internal stakeholders include Board co-workers . . . other USPTO employees, and USPTO contractors." FOIA Response at 5.

### G.   IPR Panel's Receipt of Performance-Based Annual Bonuses in 2015

Based on the information in the FOIA response, blogs, and law review articles, Hoyle "research[ed]" the APJs who had comprised the panel that decided the IPR cases concerning the 290 and 314 patents. Com. ¶ 56. His "research" indicated that, in 2015, APJ Deshpande allegedly received a performance-based bonus of $25,220, APJ Pettigrew allegedly received a bonus of $18,520, and APJ Medley allegedly received a bonus of $25,976. Com. ¶¶ 56, 59. During a period between some unspecified date and 2015, or "as of 2015," APJ Medley had been on panels for 64 IPR trials and found the challenged claims unpatentable in all of them; APJ Deshpande had been on panels for an unknown number of IPR trials and found the challenged claims unpatentable in all of them; and APJ Pettigrew had been on panels for an unknown number of IPR trials and found the challenged claims unpatentable in 97% of them. Com. ¶ 57. In addition, the 2020 FOIA Response contained an email which Vice Chief APJ Moore sent to colleagues in 2009, three years before the PTAB was established. *See* Com. ¶ 52; FOIA Response at 1. In the email, he explained that APJs of the former Board of Patent Appeals and Interferences needed to submit requests to receive productivity credit for dissents, concurrences, or remands in patent *appeals*—not IPR proceedings—because such opinions were "not normally efficient mechanisms for securing the 'just, speedy, and inexpensive' resolution" of an appeal before the Board. Com. ¶ 52; FOIA Response at 1 (quoting Bd. R. 1).[8]

### H.   Hoyle Learns of Prior USPTO Examination of His Patent Application Under SAWS

---

[8] On April 21, 2021, Hoyle learned that a former APJ, James Carmichael, had told the website IPWatchdog.com that the USPTO's performance appraisal system created an incentive to institute certain proceedings before the PTAB. *See* Com. ¶¶ 67-68. According to Carmichael's own website and IPWatchdog.com, he served as an APJ on *the Board of Patent Appeals and Interferences*, which ceased to exist when it was replaced by the PTAB upon the effective date of the AIA in 2012—years before the events underlying this lawsuit. *See* James T. Carmichael Bio, available at http://www.carmichaelip.com/carmichael.html; James T. Carmichael Bio, available at https://www.ipwatchdog.com/people/james-carmichael/; *see also* 35 U.S.C. § 6(a).

After the IPR proceedings, Hoyle also learned that, some time prior to 2014, a patent examiner had subjected some of his other patent applications—not the 290 or 314 patents—to additional scrutiny. Com. ¶ 60. There is no allegation that the USPTO denied the scrutinized patents, which were unrelated to the application for the 290 and 314 patents. Com. ¶ 60. The examiner applied this extra scrutiny pursuant to a program called the Sensitive Application Warning System (SAWS), which scrutinized patent applications filed by independent inventors from 1994 to 2014. Com. ¶ 60. This program did not significantly affect the application for the 290 and 314 patents, which were ultimately *granted*. See Com. ¶ 65. "Upon information and belief, [Vice Chief APJ] Moore" was "directly involved in implementing the SAWS program." Com. ¶ 63. Plaintiffs further allege that Lee and Vice Chief APJ Moore "knowingly concealed the existence of the SAWS program from the Office of the Inspector General for the U.S. Department of Commerce, during their tenure at USPTO." Com. ¶ 64. The USPTO discontinued the SAWS program in 2014. Com. ¶¶ 60, 81.

## I. Publication of a Paper Critical of PTAB's Previously Disclosed Peer Review and Performance Evaluation Processes

Hoyle also read a paper which he believed showed the PTAB's bias. On July 5, 2021, Ron D. Katznelson posted a paper on the Social Science Resource Network website, in which he argued that, in 2016, APJs received on average higher bonus awards for instituting IPR review. *See* Com. ¶¶ 69-70; Ron D. Katznelson, *The Pecuniary Interests of PTAB Judges – Empirical Analysis Relating Bonus Awards to Decisions in AIA Trials* ("Katznelson Paper"), available at https://poseidon01.ssrn.com/delivery.php?ID=113078126115091084121088102002106027003089005085064035004100097071017007074072000069098036057038114126109090025015000001103126010075001029042127091115105106108001020013063025017074083124115020070074020115126113000022030124116090121103124125119072084&EXT=pdf&INDEX=TRUE.

Katznelson also wrote about the PTAB's AIA Review Committee ("ARC"), which would review draft or final PTAB decisions and provide guidance or suggested edits to authoring judges on

panels. *See* Com. ¶ 71. Katznelson claimed the ARC's existence was previously unknown, but the 2020

FOIA response referenced by the complaint repeatedly mentioned the ARC. Com. ¶¶ 44 n.13, 71;

FOIA Response at 2, 5. In 2018, the Government Accountability Office ("GAO") also publicly

described the origins of ARC review to Congress as a process in which a small group of APJs "seeks

to ensure decision quality and consistency," including consistency with governing precedent, by

"giving feedback and suggestions to authoring judges prior to issuance" of a panel decision. *U.S. GAO*

*Report to the Chairman, Committee on the Judiciary, House of Representative, U.S. Patent and Trademark Office*

*Assessment of the Covered Business Method Patent Review Program, March 2018*, at 29, available at

https://www.gao.gov/assets/gao-18-320.pdf; *see* FOIA Response at 2 ("ARC comments are not

binding, but instead suggestions that a panel may consider in preparing decisions.").[9]

Katznelson further asserted that a USPTO recruitment brochure's reference to a "gain-sharing

bonus[ ]," as well as the 2018 PAP's evaluation of an APJ's "shareholder" interactions, showed that

the PTAB and the USPTO treated the IPR process as akin to the management of a for-profit business

for the benefit of IPR petitioners. *See* Com. ¶ 70; Katznelson Paper at 6. However, as revealed by the

FOIA Response referenced in the complaint and in Katznelson's paper, the 2018 PAP used the term

"stakeholder," not "shareholder." Com. ¶ 70; Katznelson Paper at 6; FOIA Response at 20.

Katznelson further mentioned the 2018 PAP's rating of Senior Executive Service (SES) employees for

"business acumen," which is a standard Executive Core Qualification for all SES employees in the

---

[9] The Court may take judicial notice of the date, existence, and contents of the GAO report, though
not the truth of its characterization of ARC's work, because the contents of such official federal agency
reports to Congress are readily verifiable with resort to official government websites and publications
whose accuracy cannot reasonably be questioned. *See Cox v. Tennessee Val. Auth.*, 1993 WL 72488, *1
n.1 (6th Cir. Mar. 15, 1993); *Illinois C. R. Co. v. Tennessee Val. Auth.*, 445 F.2d 308, 310 n.4 (6th Cir.
1971). Page citations to the GAO report are to the page numbers listed on the bottom of each page,
not to the page number of the pdf file posted on the website.

federal government and refers to "the ability to manage human, financial, and information resources strategically." U.S. *Office of Personnel Management Guide to Senior Executive Service Qualifications*, at 2, available at https://www.opm.gov/policy-data-oversight/senior-executive-service/reference-materials/guidetosesquals_2012.pdf; *see* Katznelson Paper at 6; Com. ¶ 70.[10]

### J.     Plaintiffs' Claims in this Litigation

In this suit, plaintiffs allege that defendants deprived them of their property interest in the 290 and 314 patents without due process of law, violating their Fifth Amendment rights. *See* Com. ¶¶ 1, 88-92. Plaintiffs claim that Lee, Chief APJ Smith, and Vice Chief APJ Moore must have been involved in assigning APJs Deshpande, Medley, and Pettigrew to the IPR panel here in order to ensure that the panel would invalidate the patent claims. *See* Com. ¶¶ 58, 76. Plaintiffs assert that Lee, Chief APJ Smith, and Vice Chief APJ Moore did this out of bias against patent owners. *See* Com. ¶ 58. Plaintiffs allege that, in light of her previous employment by Google, Lee's power as Director to assign APJs to panels at the time of the IPR proceedings on the 290 and 314 patents created an appearance of impropriety. Com. ¶¶ 55, 74. Plaintiffs claim the APJs' tendency to rule against patent holders and the PTAB compensation system's "pressures" made the panel rule against them. *See* Com. ¶¶ 56-58, 78.

Plaintiffs claim that Vice Chief APJ Moore's email about dissents and concurrences in patent appeals showed that he improperly discouraged dissent on PTAB panels. *See* Com. ¶¶ 52-53. Plaintiffs assert that Lee, Chief APJ Smith, and Vice Chief APJ Moore were "personally responsible" for implementing policies which provided improper incentives for APJs to rule in favor of IPR petitioners, including: the ARC review process which could encourage APJs to reach "leadership's" preferred outcome in IPR cases; the practice of assigning additional APJs to panels to influence their decisions;

---

[10] As a public government website reporting on official government standards, the Office of Personnel Management's listing of the ECQs is subject to judicial notice. *See Doe*, 551 F.3d at 416; *SEC v. Goldstone*, 952 F. Supp. 2d 1060, 1221 (D. N.M. 2013).

the bonus system which discouraged dissents; and the post-institution filing fee which gave the USPTO, and hence indirectly gave APJs, an incentive to institute IPR trials. Com. ¶ 77; *see* Com. ¶¶ 2, 34, 42, 45, 47-48, 51-53, 55. Thus, plaintiffs allege, defendants deprived them of property in violation of their due process right to an impartial decision-maker. *See* Com. ¶¶ 88-92.

## III.   LEGAL STANDARD

To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding the motion, a court should accept as true only the complaint's well-pleaded factual allegations, setting aside "formulaic recitation[s] of the elements" of a claim or legal conclusions. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). This standard does not require "detailed factual allegations," *id.*, but "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Because "[p]lausible" allegations are those that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citation omitted), a court need not draw "unwarranted factual inference[s]" in resolving a motion to dismiss. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation and internal quotation marks omitted).

Furthermore, to overcome a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff must "make a 'prima facie' case that the court has personal jurisdiction" over the defendant. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012); *see AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548-49 (6th Cir. 2016). Thus, the allegations in the plaintiff's complaint and any affidavits, viewed in the light most favorable to the plaintiff, must establish that the court has jurisdiction over the defendant. *See Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 731 (6th Cir. 2003). In evaluating whether the plaintiff has made a *prima facie* case of jurisdiction, the court should not "credit conclusory

allegations or draw farfetched inferences." *Am. Copper & Brass, Inc. v. Mueller Eur., Ltd.*, 452 F. Supp. 2d 821, 826 (W.D. Tenn. 2006) (internal quotation marks and citation omitted). Lastly, where the defendant moves to dismiss the complaint for lack of standing under Rule 12(b)(1), the plaintiff must allege facts satisfying the injury-in-fact, traceability, and redressability requirements for Article III standing. *See Am. BioCare Inc. v. Howard & Howard Att'ys, PLLC*, 702 F. App'x 416, 419-20 (6th Cir. 2017); *Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 287 (N.D. Ohio 2020).

## IV.   ARGUMENT

### A.   Hoyle Lacks Standing Because He Has No Property Interest in the Patents

Hoyle should be dismissed from this case for lack of standing. To obtain standing to sue for the deprivation of patent rights, a plaintiff must personally possess title or another legally enforceable property right in the contested patent, just as any litigant challenging a deprivation of property must have a cognizable interest in that property. *See* 35 U.S.C. § 261 (patents have the attributes of personal property and can be assigned via written instrument); *see also Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016) (both Article III standing and statutory standing require an injury in fact to the plaintiff's exclusionary rights in the patent); *see generally Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891) (plaintiff must have property interest in a patent to acquire standing to sue for infringement); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590-92 (6th Cir. 1992) (plaintiff must have vested property interest affected by challenged land regulation in order to raise procedural due process challenge to the regulation). Here, the complaint alleges, and the assignment documents confirm, that Hoyle has no legally recognized property interest in the 290 and 314 patents because he had previously assigned the entirety of his interest in them to B.E., which was the sole owner of the patents. *See* Com. ¶ 21 n.2; Assignment of 314 Patent, available at [https://legacy-assignments.uspto.gov/assignments/assignment-pat-11503-42.pdf](https://legacy-assignments.uspto.gov/assignments/assignment-pat-11503-42.pdf); Assignment of 290 Patent,

available at https://legacy-assignments.uspto.gov/assignments/assignment-pat-11503-33.pdf. Thus, Hoyle's claims should be dismissed for lack of standing, leaving B.E. as the sole plaintiff.

**B.**     **The Complaint Fails to Demonstrate Personal Jurisdiction Over Defendants**

Plaintiffs have failed to demonstrate *prima facie* personal jurisdiction over defendants because the complaint fails to allege facts establishing that the exercise of jurisdiction in Tennessee would satisfy the due process standards of *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). *See Walden v. Fiore*, 571 U.S. 277, 283 (2014); *see also* Tenn. Code Ann. § 20-2-225(2). The complaint does not assert general jurisdiction over any defendant, and it acknowledges that none of them reside in Tennessee. *See* Com. §§ 7-12. The complaint is similarly devoid of factual allegations that defendants had sufficient case-related contacts with Tennessee to create specific jurisdiction in this Court. In particular, the complaint does not allege that defendants performed any of their challenged actions in Tennessee. Rather, defendants allegedly violated plaintiffs' rights in the course of IPR trials and policy deliberations which could only have occurred at one of the USPTO's offices, none of which are in Tennessee. *See* Com. §§ 36, 75-78; USPTO locations, available at https://www.uspto.gov/about-us/uspto-office-locations. Thus, the requisite minimum contacts are absent.

The complaint asserts that venue and jurisdiction are proper in this Court because plaintiffs lost the value of property—B.E.'s patents—in Tennessee as a result of the adverse IPR decisions. Com. ¶¶ 5, 16, 92. But a plaintiff's loss of property in a particular forum state does not establish specific jurisdiction over the defendant there; "[m]ere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290; *see True Temper Sports, Inc. v. Ralco Indus.*, 2016 WL 8376740, at *2-4 (W.D. Tenn. Oct. 14, 2016) (alleged breach of contract that harmed plaintiff in Tennessee, where some negotiations were also held by mail, did not create jurisdiction there); *Higdon v. Cannon*, 2012 WL 424965, at *4-9 (E.D. Tenn. Feb. 9, 2012) (Georgia officers who allegedly unlawfully arrested Tennessee plaintiffs in Georgia and then, according to conclusory allegations, sent derogatory

15

information to Tennessee authorities were not subject to jurisdiction in Tennessee); *see also Brana v. Moravcik*, 2021 WL 4771008, at *1-3 (6th Cir. May 18, 2021). That is so because personal jurisdiction turns on *the defendant's* purposeful direction of his or her conduct toward the forum, *not the plaintiff's* presence, contacts, or harm in the forum. *See Walden*, 571 U.S. at 288-90; *Carter v. Univ. of Tex.*, 2020 U.S. Dist. LEXIS 126973, at *4-7 (E.D. Mich. Mar. 10, 2020) (for due process purposes, refusal to send certification letter to forum, causing harm to plaintiff in forum, plus communication with plaintiff in forum did not create jurisdiction); *see generally Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-24 (6th Cir. 2000); *see also Noval Int'l Res., LLC v. Andec, Inc.*, 875 F. Supp. 2d 804, 811 (W.D. Tenn. 2012) (denying jurisdiction because "[t]he Court finds, however, that these contacts occurred not because Defendant endeavored to conduct business in Tennessee but simply because Plaintiff Coleman lives here."). Accordingly, here, plaintiffs' alleged loss of their patent rights in Tennessee fails to establish personal jurisdiction over defendants, compelling dismissal of the complaint.

## C.   Plaintiffs' Claims are Time-Barred

Plaintiffs' claims should also be dismissed on statute of limitations grounds. For a *Bivens* claim, the limitations period is the same as a state's general limitations period for a tort claim, which, in Tennessee, is one year from the date the claim accrues. *See Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012); *see also Clark v. Does*, 2020 U.S. App. LEXIS 57, at *7 (6th Cir. Jan. 2, 2020). A claim accrues "when the plaintiff has a complete and present cause of action," *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (internal quotations omitted), i.e., the point at which he or she "knows or has reason to know of the injury which is the basis of [the] action." *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). Here, plaintiffs' claims accrued at the conclusion of the IPR trials in April 2015, as their alleged injury occurred upon the deprivation of their property and denial of an impartial decision-maker in those proceedings. *See Mason v. Dep't of Just.*, 39

F. App'x 205, 207-08 (6th Cir. 2002); *Zundel*, 687 F.3d at 282. Because plaintiffs filed the complaint on August 8, 2021, more than a year after the 2015 accrual date, their claims are time-barred.

The complaint asserts that the statute of limitations should be equitably tolled because the "inner machinations of the USPTO were not fully revealed or made publicly available until the present day . . ." Com. ¶ 85. But plaintiffs cannot obtain tolling based on a "discovery" theory. After all, plaintiffs discovered their alleged injury—the loss of B.E.'s patent claims at the hands of a biased IPR panel and at the behest of USPTO administrators—as soon as the IPR panel allegedly inflicted that injury in 2015. *See* Com. ¶¶ 36, 88, 92; *see also Mason*, 39 F. App'x at 207. At that point, the limitations period started to run. That is so notwithstanding plaintiffs' conclusory claims that they subsequently learned about the USPTO policies and leadership officials responsible for the alleged bias in the proceedings. *See* Com. ¶¶ 56, 76, 85. Once a plaintiff knows or should know of his or her injury, the limitations period commences, even if the plaintiff does not know the identities of all those involved in causing the injury or possess sufficient facts to sue. *See Ruiz-Bueno v. Maxim Healthcare Servs. Inc.*, 659 F. App'x 830, 834 (6th Cir. 2016); *Lundblad v. Celeste*, 874 F.2d 1097, 1103-05 (6th Cir. 1989), *Aff'd in Part, Rev'd in Part, and Vacated on other grounds*, 924 F.2d 627 (6th Cir. 1991) (en banc); *see also Standard Acceptance Co. v. Lewis Cab Co.*, 1996 WL 450811, at *7 (N.D. Ill. Aug. 6, 1996); *cf. Zundel*, 687 F.3d at 282 (since plaintiff already allegedly had a *Bivens* claim based on dog attack, his subsequent discovery of a federal policy of "dog intimidation" that supposedly prompted this and other attacks did not extend limitations period). Consequently, here, plaintiffs' purported lack of knowledge of the panel's incentives to rule against them or the identity of the other defendants who created those incentives does not establish their entitlement to tolling.

A fraudulent concealment theory of tolling would also be a non-starter here. To rely on fraudulent concealment to extend the limitations period, plaintiffs had to plead three elements in the complaint: "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to

discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013) (internal quotation marks and citation omitted). But plaintiffs fail to allege facts showing that defendants took any affirmative step to wrongfully conceal their actions. Indeed, the complaint's sole allegation of concealment relates only to Lee's and Vice Chief APJ Moore's supposed "conceal[ment] [of] the existence of the SAWS program"—a program which is not alleged to have injured plaintiffs— "from the Office of the Inspector General" rather than from plaintiffs. Com. ¶ 64. Thus, plaintiffs' allegations of concealment are not only conclusory, but also fail to assert that defendants concealed from plaintiffs the operative facts forming the basis of their claims. *See Haley v. Clarksville-Montgomery Cnty. Sch. Sys.*, 353 F. Supp. 3d 724, 734 (M.D. Tenn. 2018).

Lastly, even if the law were to recognize tolling until plaintiffs' discovery of the policies which allegedly led to PTAB's decision, such a rule would not help plaintiffs because they knew or should have known about PTAB's compensation policy, panel expansion, ARC review, and similar practices more than a year prior to the filing of the complaint. For example, because a USPTO lawyer had allegedly publicly informed the Federal Circuit in 2017 that the USPTO, in plaintiffs' parlance, "stacked" IPR panels, Com. ¶ 40, plaintiffs should have known of this practice at that time. In fact, they should have known earlier that the Director's alleged expansion of panels with APJs of his or her selection was a possibility because the AIA authorized the Director to increase panel sizes and assign APJs with its passage in 2011. *See* 35 U.S.C. § 6(c). Additionally, based on Lee's public biography listing her role as USPTO Director and her prior employment at Google, plaintiffs knew or should have known of the supposed conflict inherent in her past and current employment upon her confirmation as Director in 2015. *See* United States Patent and Trademark Office, Michelle K. Lee Biography, available at https://www.uspto.gov/about-us/michelle-k-lee. Plaintiffs should have known of PTAB's contested compensation practices in 2018 when an article cited in the complaint revealed the

contents of the 2018 PAP and the 2009 email allegedly discouraging dissenting opinions. Com. ¶ 52 (quoting Gene Quinn, *Structural Bias at the PTAB: No Dissent Desired, IPWATCHDOG.COM* (Jun. 6, 2018), https://www.ipwatchdog.com/2018/06/06/structural-bias-ptab-no-dissent-desired/id=94507/ (quoting FOIA Response at 1)). And plaintiffs should have learned this information again when the USPTO released documentation of the aforementioned policies in its 2020 FOIA response. *See* Com. ¶ 44 n.13; FOIA Response at 2-47. Plaintiffs should have been aware of the ARC over a year before the commencement of this suit based on the 2020 FOIA Response mentioning it, as well as the 2018 GAO Report explaining that the USPTO had established such an informal peer review process. *See U.S. GAO Report to the Chairman, Committee on the Judiciary, House of Representative, U.S. Patent and Trademark Office Assessment of the Covered Business Method Patent Review Program, March 2018*, at 29, available at https://www.gao.gov/assets/gao-18-320.pdf; FOIA Response at 2. As for the irrelevant SAWS program, plaintiffs cite an early 2020 decision stating that the USPTO disclosed the program's existence in 2014, and hence they essentially admit they knew or should have known of this program years before filing suit. *See* Com. ¶ 60 n.19; *see also Morinville v. United States PTO*, 442 F. Supp. 3d 286, 290 (D.D.C. 2020). Therefore, under any conception of tolling, plaintiffs' claims would be time-barred because they knew of the contested policies years before they sued.

### D.    Plaintiffs Cannot Obtain a Novel *Bivens* Remedy under Established Precedent

Plaintiffs' complaint should also be dismissed because they seek an improper extension of *Bivens* to this context. To decide whether to imply a damages remedy for an alleged constitutional violation under *Bivens*, a court must determine: (1) whether the plaintiff's claim involves "extending *Bivens* remedies into [a] new context"; and (2) if the context is new, whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (citations and internal quotations omitted); *see Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523-24 (6th Cir. 2020). This two-step analysis is designed to answer

the fundamental question "who should decide whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 137 S. Ct. at 1857 (citation and internal quotations omitted). "The answer most often will be Congress." *Id.*; *see Callahan*, 965 F. 3d at 523.

At the first step, a case presents a new *Bivens* context if "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S. Ct. at 1859; *Hernandez*, 140 S. Ct. at 743. Hence the context is new if the case differs meaningfully from: *Bivens*, which involved line-level federal narcotics agents' warrantless arrest of a suspect in his home in violation of the Fourth Amendment; *Davis v. Passman*, 442 U.S. 228 (1979), which was a suit for gender-based employment discrimination against a Congressman under the Fifth Amendment; and *Carlson v. Green*, 446 U.S. 14 (1980), in which a prisoner alleged prison officials' deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Meaningful differences can include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1860.

At the second step, a "special factor counselling hesitation" is any factor that "cause[s] a court to hesitate" before concluding that "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58; *see Hernandez*, 140 S. Ct. at 743; *Harris v. FBOP*, 2020 WL 7586968, at *2 (6th Cir. Sept. 22, 2020). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858; *see also Hernandez*, 140 S. Ct. at 750 n.12; *Callahan*, 965 F.3d at 524.

Plaintiffs' claims that high-level PTAB officials assigned biased APJs to the IPR panel and enacted policies that pressured APJs to rule against inventors present a new *Bivens* context. *See* Com.

¶¶ 1-2, 34, 42, 45, 47-48, 51-53, 55-58, 78, 88-92. Plaintiffs' sweeping challenge to the IPR system involves higher-ranking defendants in adjudicative positions, distinct patent-related legal mandates, and claims of greater generality than those implicated by *Bivens*'s law enforcement search-and-seizure context, *Carlson*'s prison medical care context, and *Davis*'s workplace sex discrimination context. *See Abbasi*, 137 S. Ct. at 1860. Recognizing the unique nature of adjudicator misconduct claims like those here, courts have repeatedly concluded that they present a new *Bivens* context for reasons similar to those outlined above. *See Goree v. Serio*, 735 F. App'x 894, 894-95 (7th Cir. 2018) (new *Bivens* context involved in claim that prison grievance administrator in administrative proceeding denied plaintiff due process under Fifth Amendment by ruling against him on erroneous grounds); *Sanders v. Herin*, 2019 WL 9242906, at *2-3 (D.S.C. Dec. 12, 2019) (same for claim that hearing officer and ALJ violated due process by engaging in harassment and other displays of anti-disability bias in Social Security benefits adjudication); *Hammonds v. Cuevas*, 2018 U.S. Dist. LEXIS 142835, at *3-4, *31-39 (S.D. Fla. Aug. 21, 2018) (same for claim that prison disciplinary hearing officer denied plaintiff due process in disciplinary hearing by changing charge mid-hearing and ruling against him regardless of evidence); *Giesse v. Sec'y of the HHS*, 476 F. Supp. 2d 734, 741-42 (N.D. Ohio 2006) (same for claim that an ALJ denied plaintiff's Fifth Amendment rights by ruling against him in Medicare review proceedings). As a result, it is of no moment that *Davis*'s clearly distinct sex discrimination claim, like plaintiffs' claims, arose under the Fifth Amendment because "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743; Com. ¶ 93. Given the differences in legal theories, defendants, and scope of claims between this case and the Supreme Court's *Bivens* trilogy, this case arises in a new context under the first step of the *Abbasi* analysis.

At the second step of the *Abbasi* framework, the risk that plaintiffs' claims will intrude into government policy-making constitutes a special factor counseling hesitation in extending a *Bivens*

remedy. Plaintiffs' claims that the USPTO Director and other decision-makers violated due process by implementing the PTAB's compensation policies, panel assignment practices, fee policies, and ARC peer-review system, *see* Com. ¶¶ 39-45, 47-48, 51-53, 69-71, 88-92, plainly challenge high-level governmental policy-making. As a result, this Court should hesitate to permit a *Bivens* suit here because "a *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)).

Relatedly, because plaintiffs assert that defendants had improper motives for implementing the contested policies and speculate about each official's role and intent in establishing them, *see* Com. ¶¶ 2, 14, 34, 39, 51-52, 58, 60, 63, 77-78, the litigation of their claims would require unacceptably burdensome inquiries into sensitive government deliberations about those policies and officials' motives for creating them. "These consequences counsel against allowing a *Bivens* action against the Executive Officials, for the burden and demand of litigation might well prevent them—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties." *Abbasi*, 137 S. Ct. at 1860.

Another special factor is Congress's silence on a damages remedy in light of its intense interest in patent rights and regulation. Specifically, because "[c]ongressional interest" in the proper level of protection against wrongful deprivation of patent rights in the patent review process "'has been frequent and intense,'" Congress's "silence [as to a damages remedy] is telling" and counsels hesitation in crafting a *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1862 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)). In that regard, in 1999, Congress created the *inter partes* reexamination procedure, which was a predecessor to IPR that similarly allowed for review of the patentability of certain claims by the Board of Patent Appeals and Interferences. In doing so, Congress expressed a desire to strike a balance between the need to protect inventors' rights within that reexamination process and the need to avoid costly litigation. *See* Consolidated Appropriations Act, 2000, Pub. L. 106-13, S. 1948, Intellectual

Property and Communications Omnibus Reform Act of 1999, §§ 4601-07; *see also* 145 CONG. REC. S14986-03, S14991-92, S15019-20, S15023 (statements of Sen. Feinstein, Sen. Hatch, Sen. Leahy). Thus, while Congress granted patent holders procedural protections in the reexamination procedure and enabled them to seek judicial review of adverse decisions to avoid wrongful deprivation of property, it did not authorize them to sue USPTO officials for damages in that process. *See id.*

Congress again turned its attention to patent holders' rights and remedies in passing the AIA. Congress expressly considered issues relevant to plaintiffs' claims, such as: the need to protect inventors from unconstitutional takings of their property interests in their patents; the proper scope of the USPTO's power to charge fees for IPR proceedings; the appropriate extent of procedural safeguards in IPR trials; the avoidance of abusive administrative review practices; and mechanisms to improve performance of USPTO personnel. *See* H.R. REP. NO. 98(I), 112th Cong., 1st Sess. (2011), 2011 U.S.C.C.A.N. 67, 75-78, 80, 111-13; 157 CONG. REC. E1191-03 (2011) (speech of Rep. West); 157 CONG. REC. E1208-02 (2011) (speech of Rep. Waxman); 157 CONG. REC. H4378-05, H4382, H4384-85, H4387-89 (2011) (debate statements of Rep. Polis, Rep. Kaptur, Rep. Jackson Lee, Rep. Schiff); 157 CONG. REC. H4420-06, H4421, H4423-25, H4427-29 (debate statements of Rep. Smith, Rep. Kaptur, Rep. Lofgren, Rep. Coble, Rep. Goodlatte, Rep. Jackson Lee, Rep. Manzullo, Rep. Rohrbacher); 157 CONG. REC. H4480-01, H4485, H4493-95 (debate statements of Rep. Jackson Lee, Rep. Manzullo, Rep. Kaptur, Rep. Smith). Congress directed the USPTO Director to provide it with a study on the efficacy of the Act within four years of Act's passage, underscoring its interest in this field. *See* Pub. L. 112-29 § 26. Despite its sustained attention to patent holders' constitutional rights, other stakeholders' interests, and the public interest, Congress did not provide patent holders with a damages remedy for due process violations in the IPR process. Because these circumstances make it "much more difficult to believe that 'congressional inaction' [in declining to establish a damages

remedy] was 'inadvertent,'" this Court should not create a damages remedy which Congress consciously declined to approve. *Abbasi*, 137 S. Ct. at 1862 (quoting *Schweiker*, 487 U.S. at 423).

Moreover, there should be no *Bivens* remedy here because there are alternative means available to protect the due process interests underlying plaintiffs' claims. Where, as here, a PTAB panel issues an IPR decision that allegedly violates a patent holder's due process rights, he or she can seek to overturn the PTAB's decision by appealing to the Federal Circuit. *See* 35 U.S.C. §§ 144; 319; *see also MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1285 (Fed. Cir. 2015) (concluding that the Federal Circuit could consider patent holder's challenge to constitutionality of IPR system's use of APJs instead of federal judges and the denial of the right to a jury trial); *Apple Inc. v. Voip-Pal.com, Inc.*, 976 F.3d 1316, 1320, 1324 (Fed. Cir. 2020) (considering due process claim on review of PTAB proceeding, though ultimately finding argument unpreserved). To the extent the PTAB's practices and policies on compensation, ARC review, panel assignment, and fees allegedly deny a patent holder due process, he or she can also sue for an injunction against those policies. *See Abbasi*, 137 S. Ct. at 1862, 1865 (noting ability to seek injunctive relief as an alternative remedial mechanism supporting denial of a *Bivens* remedy); *Harris*, 2020 WL 7586968, at *2 (same); *see also Madstad Eng'g, Inc. v. United States PTO*, 756 F.3d 1366, 1369-80 (Fed. Cir. 2014) (Federal Circuit had jurisdiction to review suit for injunction against alleged unconstitutional practices of USPTO, but the case was dismissed for lack of standing). Congressional oversight and Commerce Department Inspector General investigations offer additional avenues to curtail unconstitutional abuse of the IPR system. *See* Pub. L. 112-29 § 26; 5 U.S.C. App. §§ 4(a)(4); 4(d); 4(e). Additionally, subject to applicable defenses, an aggrieved patent holder might be able to sue the government for damages under the Federal Tort Claims Act ("FTCA") based on USPTO officials' tortious deprivation of the patent holder's property in the IPR process. *See* 28 U.S.C. §§ 2671-2680. And while the existence of the FTCA may not necessarily preclude *Bivens* relief by itself, *see Carlson*, 446 U.S. at 19-20, in the wake of *Abbasi* courts have rejected *Bivens* claims based on the

24

combination of the FTCA with other special factors. *See Oliva v. Nivar*, 973 F.3d 438, 443-44 (5th Cir. 2020); *Schwarz v. Meinberg*, 761 F. App'x 732, 734-35 (9th Cir. 2019); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020). Likewise, this Court should decline to imply a *Bivens* remedy because there are multiple alternative remedial mechanisms addressing alleged tortious and unconstitutional conduct of the type underlying plaintiffs' proposed *Bivens* claims.

###   E.   APJs Deshpande, Medley, and Pettigrew Have Absolute Immunity from this Suit

The members of the PTAB panel who presided over the IPR proceedings on the 290 and 314 patents are entitled to absolute judicial immunity from plaintiffs' claims. Officials "performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts" in administrative hearings. *Butz v. Economou*, 438 U.S. 478, 514 (1978); *cf. Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007) (recognizing same immunity for hearing officer in state agency). "Clearly, the paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction" of the administrative tribunal. *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989). Immunized judicial acts also include adjudicators' discussions with the parties during hearings, their efforts to control parties' conduct in a hearing, and their reports related to the cases or parties before the tribunal. *See Cameron v. Seitz*, 38 F.3d 264, 271-72 (6th Cir. 1994). Because "an allegation of bad faith or malice does not overcome the immunity," a claim that an administrative judge "made his decisions out of hostility" toward a party "does not negate the immunity to which he is entitled" based on his judicial acts. *Id.* at 271.

APJs Deshpande, Medley, and Pettigrew are immune from plaintiffs' *Bivens* claims because those claims arise from the APJs' judicial acts. Since the complaint alleges that these panel members denied plaintiffs due process by instituting IPR review and deeming aspects of the 290 and 314 patents unpatentable following an IPR trial, *see* Com. ¶¶ 36, 58, 78, 91-92, plaintiffs' claims stem from the panel's quintessentially judicial act of resolving the dispute between plaintiffs and the IPR petitioners.

Underscoring the judicial nature of the challenged conduct, the panel ruled on the patentability of the disputed claims in the course of quasi-judicial proceedings which resembled a trial in a state or federal court, featuring procedural protections such as the placement of the burden of proof on petitioners, the availability of pre-trial motion practice, pre-trial discovery, standardized rules of evidence, and an adversarial trial. *See* 35 U.S.C. §§ 316(a)(5); 316(a)(8); 316(a)(10); 316(e); *see also* 37 CFR §§ 41.152(a); 42.1(d); 42.2; 42.10; 42.20(c); 42.23; 42.51-65. Given the plainly judicial nature and context of the APJs' acts, the complaint's vague assertions that they acted on an anti-inventor bias under pressure are mere cursory accusations of bad faith, which cannot eliminate immunity. *See Cameron*, 38 F.3d at 271.

## F. All Defendants Are Entitled to Qualified Immunity

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The "protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). To overcome it, the plaintiff must allege facts demonstrating that: (1) the defendant violated his statutory or constitutional rights; and (2) "the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Id.* at 232 (internal quotation marks and citation omitted). "[C]ourts have also evaluated the sufficiency of the allegations of the defendant's personal involvement in the deprivation of the [plaintiff's] right[s] at the second stage of the qualified immunity analysis." *al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009) (internal quotation marks and citation omitted), *rev'd on other grounds*, 563 U.S. 731 (2011). The court has discretion to decide which prong to address first. *See Pearson,* 555 U.S. at 236.

For a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate,'" such that "'every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Ashcroft*

*v. al-Kidd*, 563 U.S. at 741). "[T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* at 665 (internal quotation marks and citations omitted). Thus, qualified immunity "protect[s] all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted); *see Dorsey v. Barber*, 517 F.3d 389, 400 (6th Cir. 2008).

Here, plaintiffs cannot overcome qualified immunity because they fail to allege that each defendant, through his or her own actions, violated plaintiffs' constitutional rights. Qualified immunity further shields defendants because their vaguely alleged adjudicative and policy-making conduct did not violate any due process right which was clearly established at the time of their actions.

  i. *The Complaint Fails to Allege Defendants' Personal Involvement in Violating Plaintiffs' Rights*

Under *Bivens*, there is no vicarious liability. *See Iqbal*, 556 U.S. at 676. Hence to survive a dismissal motion the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

To determine the sufficiency of plaintiffs' allegations of personal involvement here, the first step is to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. For example, the complaint's generic allegations that all "Defendants" or a combination of some defendants with "various other Unknown Officers" or unspecified "USPTO leadership" were "involved in," "complicit in," "personally responsible for," or "conspir[ed]" to commit allegedly unlawful acts, Com. ¶¶ 14, 51, 75, 77, 78, 94, are conclusions disentitled to the assumption of truth. *See Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (en banc) (rejecting conclusory allegation that all "Defendants" violated plaintiff's rights because it "fails to link [the alleged constitutional violation] to any defendant" and "a plaintiff in a *Bivens* action is required to allege facts indicating that the defendants were personally involved in the claimed constitutional

27

violation."); *Hamilton v. City of Romulus*, 409 F. App'x 826, 835 (6th Cir. 2010) ("Further, conspiracy claims must be pled with some degree of specificity, and vague and conclusory allegations . . . are not sufficient to state a claim" ); *Kurtz v. Hansell*, 2021 WL 1143619, at *11 (S.D.N.Y. Mar. 24, 2021) (insufficient to say defendants were "complicit in" conspiracy to violate plaintiffs' constitutional rights); *Curtis v. Little*, 2020 U.S. Dist. LEXIS 168746, at *7-8 (S.D. Ohio Aug. 3, 2020) ("plaintiff's allegations that 'upon information and belief' the prosecutors and other defendants conspired against him in initiating criminal proceedings . . . is insufficient to suggest that the defendants shared a conspiratorial objective or otherwise planned . . . to deprive him of a constitutionally-protected right.").

With respect to Lee, the complaint's assertions that she "played an instrumental role in the USPTO's implementation of the PTAB," "employed . . . case-assignment authority" to invalidate plaintiffs' patents, and was "responsible for implementing . . . improper incentives," Com. ¶¶ 76-77, fail to allege facts showing that she took any particular action to establish the contested PTAB policies, much less that she had a role in selecting the panel for the IPRs here or applying specific disputed policies to this case. *See Iqbal*, 556 U.S. at 680-81 (insufficient to allege that Attorney General was "principal architect" of illegal policy and that FBI Director was "instrumental" in adopting and executing the policy); *Bondurant v. Christie*, 2012 WL 1108523, at *8 (D.N.J. Apr. 2, 2012) (plaintiff "has alleged no facts to support personal involvement by the supervisory defendants, and simply relies on recitations of legal conclusions such that they were responsible for its agencies and employees and for developing and applying policies, practices and procedures at their respective agencies."); *Shapiro v. Goldman*, 2016 WL 4371741, at *17 (S.D.N.Y. Aug. 15, 2016) ("The bare assertion that a policy exists, and the conclusion that [a defendant] was responsible for it, are insufficient as a matter of law to state a *Bivens* claim against senior Government officials.") (internal quotation marks and citation omitted); *Danielson v. Huether*, 355 F. Supp. 3d 849, 869 (D.S.D. 2018) (allegations that some defendants asked their co-conspirator to "use his authority" as the state's attorney general and his "supervisory

authority" over investigators to "suppress" an investigation into an assault on plaintiff, and that the co-conspirator did so, insufficient to show conspiracy to violate constitutional rights); *Hall v. Smith*, 2021 WL 3929827, at *4 (S.D. Ohio Sept. 2, 2021) (insufficient to allege that defendant "implemented" a policy that classified inmates based on race).[11] The same is true of the complaint's identical "implementation" allegations against APJs Smith and Moore, Com. ¶¶ 76-77, as well as its vague "information and belief" allegation that Moore was "directly involved" in implementing the SAWS program. Com. ¶ 63; *see Sommer v. United States*, 2010 WL 3584554, at *14 (S.D. Cal. Sept. 10, 2010) ("Although Plaintiff now contends [defendant] was 'directly involved' in the [challenged] testing, she did not allege any facts which could establish [defendant's] personal involvement.") (internal citation omitted); *see also Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018, 1035 (N.D. Ohio 2013) (allegations that 'an unlawful ex parte influence was involved' in the [court's] ruling [against plaintiffs], and that [private] defendants used "bought and paid for political influence to gain access to" the judges failed to show bias by the judges or a bribery scheme by other defendants).

The complaint's conclusory allegations that unspecified officials harbored "bias" and "animus" toward inventors, Com. ¶¶ 65, 74, and that the IPR panel members "were aware of . . . pressures . . . to institute proceedings and invalidate" the subject patents, Com. ¶ 78, must likewise fall by the wayside. *See DeMartino v. New York State Dep't of Lab.*, 167 F. Supp. 3d 342, 367-68 (E.D.N.Y. 2016) (plaintiffs' allegations, namely that a hearing before a state labor agency adjudicator was a "mere sham" stemming from the agency's "illicit arrangement" to have investigators and adjudicators work closely together so that "the entire [agency] process [wa]s biased against" plaintiffs, failed to state claim for denial of an impartial decision-maker); *Elsayed v. Vill. of Schaumburg*, 2015 WL 1433071, at *4 (N.D. Ill.

---

[11] The allegations that Lee, APJ Moore and other "Unknown Officers knowingly concealed the existence of the SAWS program," Com. ¶ 64, is also a mere conclusion and, as discussed above, is immaterial to plaintiffs' claims.

Mar. 26, 2015) (allegations that defendant officers "were aware of" illegal arrests committed by other officers were conclusory and inadequate); *cf. El Mokhamad v. Kelly*, 2018 WL 488953, at *3 (E.D. Mich. Jan. 19, 2018) ("'coercion' is a legal conclusion drawn from facts, and the complaint lacks any factual basis necessary to support such a legal conclusion."); *see generally James v. Norfolk S. Ry. Co.*, 2020 WL 1316513, at *2 (N.D. Ohio Mar. 17, 2020) ("Terms like 'bias,' 'prejudice,' 'collusion,' 'conspiracy,' 'fraud,' 'fail to disclose' all express the legal conclusions that plaintiffs want the trier of fact to reach: standing alone, they are not *facts* and thus fail to state claims under the *Iqbal/Twombly* mandate."). The same is true for the complaint's threadbare claims about the conduct of unidentified "USPTO leadership," Com. ¶¶ 51, 60, 65, 70, 71, 74, 77, or unspecified occupants of the Director position, Com. ¶¶ 54. *See Carrillo v. Buendia*, 2020 WL 4584380, at *9, *15 (S.D. Tex. Aug. 10, 2020) (allegations that certain groups of defendants, such as "the jailers" or the "guards" which included some named defendants, attacked plaintiff were not sufficient to plead any particular defendant's involvement).

Thus trimmed of conclusions, the complaint fails to sufficiently plead that each individual, through his or her own actions, violated plaintiffs' constitutional rights. Reduced to its factual averments, the complaint merely alleges that Lee held the position of USPTO Director at the time of the challenged IPR petitions and trial, *see* Com. ¶¶ 34, 55, which, if true, is an insufficient basis for *Bivens* liability. *See Iqbal*, 556 U.S. at 676. In all significant respects, however, this unavailing allegation cannot be true: indisputable public records demonstrate that Lee was not confirmed as USPTO Director until March 9, 2015, at which point the panel had already been selected, had already instituted the IPR reviews, and was just weeks away from issuing a final decision. *See* Actions: PN 61—114th Congress (2015-2016), available at https://www.congress.gov/nomination/114th-congress/61; *Facebook, Inc.*, 2015 WL 1735098, at *1. And the complaint's allegations about the practice of adding extra APJs to a panel to skew the outcome fail to show any defendant's personal involvement in a violation of *these plaintiffs'* rights because it is undisputed that no so-called "stacking" with extra APJs

30

occurred in the IPR proceedings on plaintiffs' patents. *See* Com. 36; *Facebook, Inc.*, 2015 WL 1735098, at *1. The same fundamental pleading failures doom the claims against Chief APJ Smith. The complaint merely alleges he held the position of Chief APJ at the time of the IPR here. It does not offer facts demonstrating he established disputed policies resulting in the alleged denial of an impartial decision-maker in the IPR review of the subject patents. *See* Com. ¶ 8; *see Iqbal*, 556 U.S. at 676.

Similarly, the allegations that Vice Chief APJ Moore sent an email in 2009 outlining the need for APJs to specifically request decisional units based on concurrences or dissents fall short of demonstrating personal involvement. Com. ¶ 52. Aside from the lack of any claim that Vice Chief APJ Moore originated this decisional units policy, the policy could not have denied plaintiffs their patent rights via IPR because Moore's email set forth a policy for compensation based on *ex parte appeals*, not IPR, which did not exist at the time. Indeed, the complaint does not allege that the USPTO's decisional units policy played any role in the outcome of the IPR proceedings on the 290 and 314 patents.

The complaint also fails to allege that APJs Deshpande, Medley, and Pettigrew personally participated in depriving plaintiffs of an impartial decision-maker in the IPR proceedings. Conclusions aside, the complaint does not allege that these panel members said or did anything at the institution or trial phases of the IPR proceedings to indicate bias against plaintiffs, nor does it attribute any allegedly harmful policies on panel assignment, compensation, or fees to these APJs. The complaint simply says that the panel members presided over the IPR proceedings and issued a determination— later affirmed by the Federal Circuit—that certain claims were unpatentable. Com. ¶¶ 36-37. Hence the complaint and its incorporated materials fail to allege facts showing that the panel personally participated in creating any policy or harbored any personal bias that violated plaintiffs' rights.

   *ii.*   *Due Process Precedents Refute Plaintiffs' Claims*

At any rate, the specific due process right plaintiffs seek to invoke was not clearly established at the time of the IPR proceedings.

The Due Process Clause of the Fifth Amendment prevents an adjudicative decision-maker from presiding over a case in which he or she has a personal bias toward one of the parties. *See Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982). However, an administrative adjudicator is presumed impartial, and this presumption cannot be overcome merely by statistics showing the adjudicator's frequent rulings in favor of a particular type of party, unless there are direct statements or other facts evincing the adjudicator's bias in the case at hand. *See Perkins v. Astrue*, 648 F.3d 892, 902-03 (8th Cir. 2011); *Allen v. Comm'r of Soc. Sec.*, 2018 WL 4625738, at *8 (W.D. Mich. Sept. 27, 2018). "Nor is a decisionmaker disqualified [for personal bias] simply because he has taken a position, even in public, on a policy issue related to the dispute. . . ." *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976).

Like the personal bias discussed above, a narrow class of structural biases in the adjudicative process can offend due process. In particular, the Due Process Clause prohibits procedures which provide an adjudicative decision-maker with a "direct, personal, substantial pecuniary interest" in the outcome of the proceeding or a "strong" motivation to ensure his or her ruling aids the institution. *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); *see Gibson v. Berryhill*, 411 U.S. 564, 579 (1973); *Bailey v. City of Broadview Heights*, 674 F.3d 499, 503 (6th Cir. 2012). The party asserting such a structural and direct self-interest bears the burden of establishing its existence. *See Schweiker*, 456 U.S. at 195-96.

The "mere fact that an administrative or adjudicative body derives a financial benefit from fines or penalties that it imposes is not in general a violation of due process." *Van Harken v. City of Chicago*, 103 F.3d 1346, 1353 (7th Cir. 1997). That an official's decisions can contribute to his or her agency's funds is not sufficient to violate due process unless money paid as result of the adjudicator's decisions is deposited in a fund he or she "directly control[s]" in an executive role. *See Delaware Riverkeeper Network v. FERC*, 895 F.3d 102, 112 (D.C. Cir. 2018); *see also Klein v. City of Jackson*, 477 F. App'x 317, 320-21 (6th Cir. 2012). Where Congress is responsible for budget decisions and

appropriations for the adjudicator's agency, the adjudicator lacks the necessary direct control over funding to establish structural bias. *See Delaware Riverkeeper*, 895 F.3d at 112.

Indeed, no due process violation arises from "financial motivations" which are "attenuate[d]," like the ability to seek funding "to recoup losses" through other means such as "raising fees." *See Alpha Epsilon Phi Tau Chapter Hous. Ass'n v. City of Berkeley*, 114 F.3d 840, 847 (9th Cir. 1997) (White, J.). Thus, an adjudicator's attenuated financial incentive to rule in a certain way in order to enable the agency to collect more fees from more people does not violate due process principles. *See Dugan v. Ohio*, 277 U.S. 61, 65 (1928); *Delaware Riverkeeper*, 895 F.3d at 112; *Doolin Sec. Sav. Bank v. FDIC*, 53 F.3d 1395, 1407 (4th Cir. 1995); *Northern Mariana Islands v. Kaipat*, 94 F.3d 574, 580-81 (9th Cir. 1996); *Van Harken*, 103 F.3d at 1353; *see also Patlex Corp. v. Mossinghoff*, 771 F.2d 480, 487 (Fed. Cir. 1985) (USPTO regulation allowing agency to avoid refunding fees if it ruled a certain way in a reexamination proceeding did not violate due process). Likewise, the fact that a decision-maker could obtain performance awards for swiftly disposing of a large volume of cases does not, by itself, create an unconstitutional structural bias. *See NLRB v. Ohio New & Rebuilt Parts, Inc.*, 760 F.2d 1443, 1449, 1451-52 (6th Cir. 1985).

In light of the above principles, and as will be detailed below, no Supreme Court or Sixth Circuit precedent has clearly established plaintiffs' proposed due process right to a decision-maker who did not: issue an evidence-based and judicially affirmed IPR determination in the case *sub judice* while maintaining a longstanding record of ruling more frequently against inventors; increase collection of administrative fees via his or her rulings; serve under a policy requiring more effort to obtain performance credit for dissents than for majority opinions; receive non-binding guidance on decisions from a committee of peers; or serve in an agency that permits leadership appointment of APJs to expanded panels. Consequently, defendants have qualified immunity.

        iii.      *Plaintiffs' Alleged Statistical Evidence Does Not Establish that the APJs Were Biased*

APJs Deshpande, Medley, and Pettigrew are entitled to qualified immunity from plaintiffs' claims that the APJs' frequent past rulings against patent holders established their personal bias against plaintiffs. As explained above, statistics demonstrating that an administrative decision-maker has frequently ruled in favor of or against a particular type of party cannot, by itself, establish an unconstitutional bias in any specific case. Here, then, APJs Deshpande, Medley, and Pettigrew did not violate plaintiffs' due process rights simply by presiding over the IPR proceedings after issuing supposedly numerous prior rulings against patent holders in other cases.

iv.     *It Was Not Clearly Established that the Post-Institution Fee System and Performance Evaluation Standards Created Unconstitutional Structural Bias*

Even if defendants were personally involved in increasing the collection of post-institution fees via their policies and IPR decisions, they would be qualifiedly immune from plaintiffs' *Bivens* claims because plaintiffs had no clearly established right to a decision-maker who lacked an indirect incentive to increase an agency's collection of fees. To be sure, the Director has the power to increase the USPTO's fee collection by setting post-institution fees, and APJs have a similar ability to increase fee collection by granting institution of IPR review. But these officials lack the direct control over the agency's budget and the disposition of those fees necessary to give rise to an unconstitutional structural bias. It is Congress—not the USPTO Director, the Chief Judge, or the APJs—which controls the USPTO's budget, and Congress prevents the agency from spending fee revenue beyond a certain level, with no guarantee that Congress will appropriate the revenues from additional fee revenue beyond existing congressional authorizations. *See* 35 U.S.C. § 42(c)(2) (funds are available to the USPTO only "[t]o the extent and in the amounts provided in appropriations Acts"); *see, e.g.*, Pub. L. 111–117, 123 Stat. 3034, 3116 (2009) (setting a maximum appropriation with no authority to spend additional funds that USPTO might collect). The USPTO Director merely provides the Department of Commerce a recommended budget to submit to the Office of Management and Budget, with the APJs having no formal statutory role in the recommendation process. *See* 35 U.S.C. §§ 3(a)(2)(B), 5(d)(1). As a result,

Lee, Chief APJ Smith, Vice Chief APJ Moore, and the other APJs could not directly increase the USPTO's budget by setting post-institution fees or issuing decisions imposing such fees, so there was no direct structural financial incentive for the agency, much less any adjudicator, to rule against patent holders at the institution phase of IPR.

Defendants are also entitled to qualified immunity from plaintiffs' claims arising from the USPTO's performance evaluation and compensation policies. Beyond the undeniable fact that the challenged policy regarding APJ performance credits for concurrences and dissents was set forth in a *2009* email about administrative *appeals*—not in a policy about *IPR* proceedings at the time of the *2014* trials here—no precedent clearly established that the USPTO violated the Constitution by requiring its APJs to offer a special justification for the receipt of credit for dissents or concurrences. Assuming *arguendo* this policy discouraged APJs from authoring dissenting opinions, it did not financially reward an APJ for ruling in favor of or against a patent holder because: (1) an APJ's dissenting opinion does not represent the prevailing view of the panel majority and therefore does not change the outcome of the proceeding for any party; and (2) a dissenting opinion may advocate for a ruling in favor of a patent holder, not just against a patent holder, such that it is not inherently likely to advance the position of one party or another. Since this even-handed policy governing just one of many performance criteria did not provide a direct financial incentive to rule against patent holders, it did not violate plaintiffs' clearly established due process rights. *See generally Tumey*, 273 U.S. at 532-33; *cf. Hicks v. City of Watonga*, 942 F.2d 737, 747-49 (10th Cir. 1991) (the mere fact that the council's decision to affirm the dismissal of a police officer was unanimous did not show that all the councilmembers were biased).

In recognition of the foregoing principles, the Federal Circuit recently rejected the structural bias claims which plaintiffs now advance regarding fees and performance evaluation. In *Mobility Workx, LLC*, 15 F.4th 1146, the Federal Circuit rejected a patent holder's claim that PTAB's post-institution fees created a structural bias incentivizing APJs to grant institution of IPR proceedings. *See*

*Mobility Workx, LLC*, 15 F.4th 1146 at 1154. The Federal Circuit explained that, because the Director, Chief APJ, and Vice Chief APJ simply advise on the budget submitted to Congress and cannot guarantee the agency will receive the benefit of post-institution fees, those officials' "role in budgeting is therefore too remote to constitute a due process violation." *Id.* The court added that "[t]he role of other APJs in the budgetary process is even more remote, and even less a due process problem." *Id.* The Federal Circuit also rejected the patent holder's contention that the APJs' ability to receive performance credits for final written IPR decisions gave rise to an improper incentive to institute IPR review and rule against patent holders, concluding that "even if there were an incentive to institute AIA proceedings to earn decisional units, any interest APJs have in instituting AIA proceedings to earn decisional units would be too remote to constitute a due process violation." *Id.* at 1156. The court reasoned that the APJs had no improper incentive based on the allocation of decisional units because APJs' receipt of decisional units for IPR opinions did not depend on the outcome of the decision, and at any rate, they could earn decisional units through appeals and other PTAB work unrelated to IPR review. *See id.* In a footnote, the Federal Circuit further ruled that APJs' statistical pattern of issuing more erroneous IPR determinations at the end of a performance evaluation period than at the start of that period did not show that the APJs responded to an improper incentive to institute more IPR trials in order to earn more decisional units before the end of the evaluation period. *See id.* at 1156 n.7.

Here, as in *Mobility Workx*, the APJs' ability to increase post-institution fee collection by granting institution of more proceedings did not violate due process because neither the APJs nor USPTO administrators had a sufficient role in setting the USPTO's appropriated budget to directly and unlawfully incentivize more frequent institution of IPR. *See id.* at 1154. And just as the allocation of decisional units based on final written IPR opinions did not bias the APJs in *Mobility Workx*, the same bonus system did not establish an unconstitutional structural bias here. *See id.* at 1154-56. Moreover, like the statistical evidence of erroneous decision-making leading up to bonus awards in

*Mobility Workx*, the alleged statistical evidence here that APJs frequently ruled against patent holders did not, by itself, demonstrate the existence of bias or a due process violation. *See id.* at 1156 n.7. Thus, this Court, like the Federal Circuit in *Mobility Workx*, should reject plaintiffs' due process claims.

> v.   *It Was Not Clearly Established that the ARC, Panel Stacking, or SAWS Violated Plaintiffs' Rights*

Plaintiffs' complaints about the ARC also founder on qualified immunity. The existence of the ARC, which allegedly offered non-binding suggestions to APJs regarding their IPR decisions' consistency with judicial precedent and official agency policies, did not violate clearly established due process principles. Indeed, a non-binding peer-review process meant to further the legitimate goal of maintaining consistency with precedent has no logical tendency to introduce bias for or against a particular party into the IPR process.

Nor does it deny a party due process to decline to disclose whether the ARC offered guidance in a particular case. Even if an IPR party had the supposed right "to know the identity of the ultimate decision-makers in any adjudicative system," Com. ¶ 90, the failure to disclose the ARC's provision of advice in a particular case would not violate such a right because the ARC members are not the "ultimate decision-makers." Rather, the panel APJs, who are free to accept or reject the ARC's advice and then issue their final decision, are the ultimate decision-makers in IPR cases. Since the litigants know the panelists' identities, there is no violation of the alleged right to know the identities of the ultimate decision-makers. *Cf. Chocallo v. Bureau of Hearings & Appeals, SSA*, 548 F. Supp. 1349, 1370 (E.D. Pa. 1982) (peer review program for Social Security Administration ALJs did not inherently eliminate decisional independence or violate statutory procedural protections for ALJs).

Defendants are qualifiedly immune from plaintiffs' challenge to the propriety of the alleged assignment of additional APJs to a panel to supposedly influence the result because no such thing is alleged to have occurred here. And even if it had, defendants would remain immune because plaintiffs fail to identify any precedent clearly establishing a due process right to a hearing before an adjudicative

panel which cannot be assigned or enlarged by the leadership of its parent agency. That is not surprising, as due process does not require any specific process for the assignment of adjudicators absent affirmative evidence of a particular adjudicator's bias. *See United States v. Torbert*, 496 F.2d 154, 156-57 (9th Cir. 1974) (absent evidence of actual bias, court's refusal to randomly assign a judge to defendant's case per local rules did not violate due process); see *also Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984) ("[A] defendant does not have a right to have his case heard by a particular judge. Nor does a defendant have the right to have his judge selected by a random draw.") (internal citations omitted); *Dixon v. Barrett*, 2012 U.S. Dist. LEXIS 188128, at *29-30 (E.D. Mich. Nov. 21, 2012) ("Likewise, petitioner has pointed to no evidence, other than his own assertion, that the successor judge who presided over his trial was 'hand-picked' by the recusing judge. And even if he had such evidence, that alone would not entitle him to habeas relief."); *cf. In re Alappat*, 33 F.3d 1526, 1531-36 (Fed. Cir. 1994) (concluding that the USPTO Director has the statutory authority to expand the size of panels and assign any member of the Board to those panels, including senior officials serving closely with the Director, and that this practice does not impermissibly make the Board the "alter ego" of the Director). Given that the assignment process for adjudicators does not generally implicate due process, that there is no precedent clearly invalidating so-called "panel stacking," and that this challenged assignment practice was not applied here, defendants are immune from plaintiffs' claims.

The alleged existence of the SAWS program adds nothing to plaintiffs' claims. Because plaintiffs' patent applications were initially approved despite patent examiners' alleged extra scrutiny of such applications under the SAWS program, *plaintiffs'* rights, as opposed to others' rights, could not have been violated by this program. And plaintiffs again fail to identify any precedent which would clearly establish the unlawfulness of the SAWS program and overcome qualified immunity anyway.

Lastly, the Federal Circuit's affirmance of the IPR panel's decisions regarding the 290 and 314 patents only bolsters defendants' immunity. In a decision which plaintiffs do not challenge in this suit,

the Federal Circuit concluded that substantial evidence and a proper interpretation of the contested patent claims supported the IPR panel's determination that the claims were unpatentable. In light of that decision, the immunity question becomes not simply whether the disputed features of the IPR system violated plaintiffs' due process rights, but rather whether the panel's issuance of a legally and factually correct IPR determination in the context of this supposedly flawed system deprived plaintiffs of due process rights clearly established by then-controlling precedent. The answer should be no. *Cf. Moore v. Selsky*, 900 F. Supp. 670, 674-76 (S.D.N.Y. 1995) (where hearing officer ignored some evidence but relied on other evidence to discipline plaintiff, he did not violate due process or deny plaintiff an impartial decision-maker in part because his decision was still supported by the evidence notwithstanding the alleged error).

###### vi. *The Cases Cited in the Complaint Are Immaterial to the Immunity Analysis*

The complaint's observation that the general right to an adjudication before an impartial decision-maker is well established, Com. ¶ 89, cannot overcome defendants' qualified immunity. Just this term, the Supreme Court reiterated that qualified immunity will not yield to such generalized principles of constitutional law, as the Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, __S. Ct.__, 2021 WL 4822664, at *2 (Sup. Ct. Oct. 18, 2021). Rather, the immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004), and the allegedly violated "rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah*, __S. Ct.__, 2021 WL 4822664, at *2 (internal quotation marks and citations omitted). Plaintiffs' paean to the general right to an impartial decision-maker ignores this critical plank of the immunity analysis and fails to save their claims from dismissal.

Finally, the case law cited in the complaint does not clearly establish any right "to know the identity of the ultimate decision-makers in any adjudicative system." Com. ¶ 90; *see id.* ¶ 90 n.25. Instead, those cases discuss the right of a criminal defendant to have his or her trial conducted in public, as well as the related and more limited right of the public to access such criminal trials. *See In re Oliver*, 333 U.S. 257, 267-78 (1948) (discussing the right to a public trial in criminal matters and invalidating a summary criminal contempt conviction entered during the defendant's appearance in private before a one-man "judge-grand-jury."); *see also Levine v. U.S.*, 362 U.S. 610, 616 (1960) (due process right to public adjudication of criminal contempt); *Estes v. State of Tex.*, 381 U.S. 532, 539-52 (1965) (balance of right to public criminal trial against right to fair trial); *Sheppard v. Maxwell*, 384 U.S. 333, 349-62 (1966) (balance of rights of press to access criminal trial against right to fair trial); *Gannett Co., v. DePasquale*, 443 U.S. 368, 380-81 (1979); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1029-30 (11th Cir. 2005) (right to public criminal trial); *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014) (right of public access to criminal trial versus grand jury secrecy). Thus, the complaint fails to identify precedent clearly establishing the right purportedly violated by defendants and fails to offer allegations sufficient to defeat qualified immunity.

## V.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be granted.


DATE: November 23, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

*s/* John B. F. Martin
JOHN B. F. MARTIN
NY Bar No. 4682928(admitted W.D. Tenn. 10/5/21)
Trial Attorney, Constitutional Torts Staff
Torts Branch, Civil Division
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044
T: (202) 616-4492; F: (202) 616-4314
John.B.Martin@usdoj.gov

*Counsel for Michelle K. Lee, James Donald Smith, James T. Moore, Sally C. Medley, Kalyan K. Deshpande, and Lynne E. Pettigrew in their individual capacities*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served via the Court's CM/ECF electronic filing and notification system on all system participants this 23rd day of November, 2021.

*s/ John B. Martin*